IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Chadrick Fulks, #16617-074,    )   C.A. No. 2:06-0980-PMD-RSC
                                  )
                Plaintiff,        )
                                  )
          -versus-               )  **REPORT AND RECOMMENDATION**
                                  )
James Metts, Sheriff/Lexington   )
County; Bernice Mitchell, Deputy )
Sheriff; Paula Lybrand, Deputy   )
Sheriff; Valerie Allen, Deputy   )
Sheriff; Cain Mayrant, Deputy    )
Sheriff; John Doe #1, Deputy     )
Sheriff; John Doe #2, Deputy     )
Sheriff,                         )
                                  )
                Defendants.       )

This civil rights action pursuant to 42 U.S.C. § 1983[1]

brought on March 8, 2006, in the District Court for the Southern

---

[1]  Plaintiff denominated the action as one brought pursuant
to Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971), however his defendants are state
actors rather than federal actors.  The action is properly
brought under 42 U.S.C. Section 1983 which provides,

    Every person who, under color of any statute, ordinance,
    regulation, custom, or usage, of any State or Territory or
    the District of Columbia, subjects, or causes to be
    subjected, any citizen of Section 1983, titled a civil
    action for deprivation of rights reads in relevant portion:
    the United States or other person within the jurisdiction
    thereof to the deprivation of any rights, privileges, or
    immunities secured by the Constitution and laws, shall be
    liable to the party injured in an action at law, suit in
    equity, or other proper proceeding for redress, except that
    in any action brought against a judicial officer for an act
    or omission taken in such officer's judicial capacity,
    injunctive relief shall not be granted unless a declaratory
    decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

District of Indiana and subsequently transferred here on March 24, 2006, by a former federal detainee, now a federal prisoner, proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motion for summary judgment, the plaintiff's motion to amend the complaint, and the plaintiff's motion to compel service on Paula Lybrand. 28 U.S.C. § 636 (b).

The plaintiff, Chadrick Fulks, sued James Metts, Sheriff/Lexington County; Bernice Mitchell, Deputy Sheriff; Paula Lybrand, Deputy Sheriff; Valerie Allen, Deputy Sheriff; Cain Mayrant, Deputy Sheriff; John Doe #1, Deputy Sheriff; and John Doe #2, Deputy Sheriff, and alleged that his constitutionally protected rights were violated during his pretrial incarceration at the Lexington County Detention Center (LCDC) in Lexington, South Carolina, where he was housed by the United States Marshall's Service. Specifically, he alleges that his constitutionally protected rights were violated when he was subjected to "punitive segregation" without due process, unconstitutional conditions of confinement, denial of property, and excessive force. He sued each defendant in his or her official and individual capacities and seeks damages.

On September 12, 2006, the plaintiff filed a motion denominated "Motion to effectuate service on defendant Paula

2

Lybrand". The defendants filed the motion for summary judgment on November 27, 2006. On December 4, 2006, the plaintiff was provided a copy of the defendants' motion for summary judgment, affidavits, and exhibits. He was also given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed a brief in opposition to the motion for summary judgment on January 29, 2007, with his own affidavit as well as various exhibits. Also on January 29, 2007, Plaintiff filed a motion to amend his complaint to name the John Doe #1 defendant. The defendants filed a reply to Plaintiff's opposition to the summary judgement motion on February 8, 2007, and the plaintiff responded to the reply on March 5, 2007. The defendants then filed an opposition to the motion to amend the complaint with affidavits to which the plaintiff replied on March 5, 2007. Hence it appears consideration of the motions is appropriate.

<b><u>SUMMARY JUDGMENT STANDARD</u></b>

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56 (c) have been met. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and

3

on which he bears the burden of proof.  Id. at 322.  The party

seeking summary judgment must inform the court of the basis for

its motion, and identify those portions of the record that

demonstrate the absence of a genuine issue of material fact.  The

moving party, however, need not offer proof that negates the

opponent's claim; rather, as to issues on which the party

opposing the motion has the burden of proof at trial, the party

seeking summary judgment need only point to an absence of

evidence to support the opponent's claim.  The party opposing

summary judgment must then point to facts evidencing a genuine

issue for trial.  Fed. R. Civ. P. 56 (c); see also, Anderson v.

Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the

plaintiff raises a "metaphysical doubt" as to the material facts.

Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  Likewise, "unsupported speculation is

not sufficient to defeat a summary judgment motion."  Felty v.

Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

If the plaintiff's evidence does not raise a genuine issue as to

a material fact, then summary judgment is proper for the

defendants.  See, Anderson, 477 U.S. at 249-50 (where evidence is

not significantly probative, then summary judgment is proper).

Furthermore, even as to a material fact, an issue is genuine only

where the record establishes that the fact-finder could find, by

4

a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor.  Id., 477 U.S. at 252.

## FACTS

The relevant facts, either undisputed or according to the plaintiff, and taken in the light most favorable to the plaintiff as the non-moving party for purposes of the defendants' motion, as well as all reasonable inferences therefrom, to the extent supported by the record are as follow.

The plaintiff was held at the LCDC for part of the time he was held in pretrial detention on federal criminal charges.  The plaintiff was booked into the LCDC by detainer from the United States Marshal's Service on January 1, 2003.  See, Ex. A to Aff. of Metts, pg. 1.  He was held at the LCDC until April 24, 2003, when he was transferred to the Alvin S. Glenn Detention Center. Id. at 1 and 14.  The plaintiff was convicted of various crimes and is now awaiting imposition of the death penalty at the Terre Haute, Indiana, facility of the Federal Bureau of Prisons.

Fulks complains of his conditions of confinement as follows. Fulks was placed in administrative segregation at the LCDC in response to notification from the United States Marshal's Service that Fulks had escaped from another detention facility.  Since he was in administrative segregation, he was denied commissary privileges, visitation except from his attorneys, telephone privileges, reading materials, writing utensils, personal

5

property, and "legal property".  Aff. para 4.  He was denied
access to a law library.  Defendant Metts told Fulks this was
being done on his orders and because he did not like persons who
committed the crimes of which Fulks was accused.

During his time at the LCDC, Fulks was housed in an
extremely cold cell with a filthy overflowing toilet and thick
black mold and feces on the cell walls.  He was given one sheet
and one blanket which remained damp most of the time and which
was never laundered for the entire four months he was at the
detention center.  Likewise, he was provided only one set of
clothing and it was never laundered.  Mitchell and Metts ordered
that he be denied any cleaning supplies, any toilet paper for the
first two weeks, and any basic hygiene items such as soap,
toothpaste or shampoo.

Defendants Metts and Mitchell were unresponsive to Fulks'
personal and repeated pleas to correct the conditions and they
were aware of the deleterious effects of the conditions upon
Fulks' health.  Mitchell and Metts told Fulks that they were not
going to help him because they did not like rapers and murderers
like Fulks.  As a result, Fulks developed bacterial infections of
his eyes, throat, and face because of "fungus growing all over
me", and he lost over 50 pounds.  Fulks "thought he was going to
die because he was desperately sick."  Aff. para. 40-44.

6

Fulks also complains that he was brutally assaulted by defendants Mitchell, Lybrand, Mayrant, and John Doe #1, on April 24, 2003, when he was taken from his cell for transfer to another detention center. Fulks was in belly chains, handcuffed within a black box, and in leg irons. Fulks was told he could not have any personal property with him and Fulks turned over all property except some photographs which he need for his criminal defense. The officers saw that Fulks had kept the photographs and put them in his pants. Mayrant struck Fulks repeatedly in the face with his fist. John Doe #1 slammed him onto the floor and held him there with Lybrand's help. John Doe #2 jumped on him, and knocked the breath out of him by slamming his knee into Fulk's stomach. Allen jumped on him while the officers held him and "she grabbed [him] by the genitals and penis and started squeezing and pulling at the same time until I though she was going to yank them off", causing Fulks great pain. Aff. para. 57. Mitchell slammed Fulks' head into the concrete floor repeatedly and stuck her fingers and finger nails into [his] eyes and literally started clawing [his] eyes and face", which caused significant bleeding and pain. Aff. para. 57.

Next, Allen and John Doe #1 picked Fulks off the floor and then dropped him face first onto the floor. Fulks attempted to "curl up into a fetal position kneeling...but John Doe #1 then drop kicked [him] full force in the butt sending [him] reeling

7

across the cell...and Myrant jumped on top of [him] and hit [him] in the face, head and neck." Aff. para. 61.

Lybrand, Mayrant, and John Doe #1 picked him up and put him in a restraint chair where Mayrant hit him in the throat and twisted his head around; John Doe #1 jumped on his leg irons causing great pain in his ankles.  A nurse instructed Lybrand to loosen the restraint cuffs and leg irons and take Fulks to a hospital but Lybrand refused.

The officers easily retrieved the photographs before the beating began, Fulks did not resist the officers in any way, and Fulks could not defend himself because of the handcuffs, belly chains and leg irons.

When the Marshals arrived to transport Fulks, Mitchell and Lybrand told them that Fulks' injuries were self-inflicted.  At that time Fulks could not stand unassisted and was losing consciousness.  Fulks was eventually taken to the hospital where he was found to have a "raptured tailbone", a broken tooth, extensive bruising and lacerations all over his body, broken blood vessels in his eyes, bruised genitalia, and "severe whiplash." Aff. para. 71.  Fulks continues to have severe back, neck, and ankle pain and "is plagued with nightmares of the brutal beating [he] was unprovokedly subjected to."  Aff. para. 72.

8

Not surprisingly, the defendants' evidence wholly contradicts Fulks' sworn affidavit.

## LAW APPLIED TO PRETRIAL DETAINEES

While claims challenging conditions of confinement and alleging the use of excessive force normally arises under the eighth amendment's cruel and unusual punishments clause, Plaintiff's claim is analyzed under the due process clause because he was a pretrial detainee and thus not subject to punishment of any kind.  This distinction is of no import, however, because the inquiry is the same under the Eighth Amendment as it is under the due process clause of the Fourteenth amendment.  See, e.g., Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988).

## ELEVENTH AMENDMENT IMMUNITY

Claims under § 1983 are limited by the scope of the Eleventh Amendment.  Neither the state nor state officials acting in official capacity are "persons" within the meaning of § 1983, except that state officials sued in their official capacity for injunctive relief.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71(1989).  The sheriff is a state official and his employees, the detention center officers here, in their official capacity, enjoy Eleventh Amendment immunity from suit, and are not "persons" amenable to suit.  See, e.g., Barrett v. Brooks, 2001 WL 34684725 (D.S.C. 2001).  However, the defendants in their

9

individual capacities are not protected by the Eleventh Amendment and are "persons" amenable to suit for damages. Hafer v. Melo, 502 U.S. 21, 31, 112 S.Ct. 358 (1991).

Therefore, it appears that the action against Defendants in their official capacities for damages should be dismissed.

## CONDITIONS OF CONFINEMENT

Due process requires the state to provide pretrial detainees with the minimal civilized measure of life's necessities such as food, warmth, exercise, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993)). A pretrial detainee can demonstrate deliberate indifference by either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).

10

The plaintiff must also produce evidence of a serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on a prison conditions claim.  Id. at 1380-1381.

Here there a conflict as to the plaintiff's conditions of confinement.  However, there is evidence that Fulks was confined for almost four months in isolated, unsanitary, wet conditions where he was made to eat and sleep in close proximity to human waste, was denied cleaning supplies, basic hygiene supplies, clean clothing and bedding, and lacked minimal warmth.  He was not allowed visitors except his attorneys, use of a telephone, and reading materials.  He quickly developed serious bacterial infections and lost almost fifty pounds because of his conditions of confinement.

It certainly appears that a fact finder is needed to determine what the conditions actually were and whether Fulks' conditions of confinement deprived him of the minimal civilized measure of life's necessities amounting to punishment.  The fact finder must also decide whether defendants Metts and Mitchell intended punish Fulks, as Fulks asserted.  If a fact finder concludes that there was no actual intent to punish, they must then determine whether the conditions or restrictions which they concluded did exist were reasonably related to a legitimate non-punitive purpose and whether it was excessive in relation to that

11

purpose.  Bell v. Wolfish, 441 U.S. 520, 538 (1979); Furtell v.

Hardy, 914 F.2d 248 (4th Cir. 1990); McElveen v. County of Prince

William, 725 F.2d 954 (4th Cir), cert. denied, 469 U.S.819

(1984).  Summary judgment should be denied on Fulks' conditions

of confinement claim as there remain genuine material fact issues

to be resolved.  Fed.R.Civ.P 56(c).

### EXHAUSTION

Fulks' third cause of action concerns his inability to

conform to the exhaustion requirements of the Prison Litigation

Reform Act.  However, the defendants are not seeking dismissal of

the action on that basis, so Fulks has suffered no injury as a

result.  That cause of action should be dismissed.

### EXCESSIVE FORCE

Under the Fourteenth Amendment, Fulks had the right to be

free of excessive force that amounts to punishment.  United

States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert denied, 498

U.S. 1049 (1991).  The factors to be used in determining whether

the force used was excessive are:

> the need for the application of force, the
> relationship between the need and the amount of
> force that was used, the extent of injury
> inflicted, and whether force was applied in a good
> faith effort to maintain or restore discipline or
> maliciously and sadistically for the very purpose
> of causing harm.

King v. Blankenship, 636 F.2d 70, 73 (4th Cir. 1980) (quoting

Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied,

12

414 U.S. 1033 (1973)).

Here, a fact finder could determine that Fulks was truthful and, if so, he was certainly subjected to unconstitutional excessive force.  His facts are that, while he took his photographs when told not to, he did nothing to resist the officers who took them back.  He was totally compliant with their instructions and was unable to defend himself or assault them because he was handcuffed with a black box, in belly chains, and in leg irons.  All defendants save Metts simply gratuitously beat him sadistically and caused very serious injuries, including a broken tail bone, internal bleeding, broken blood vessels in his eye, a cracked tooth, and multiple lacerations and contusions. Further, he still suffers painful physical and emotional residuals from the beating.

Under Fulks' sworn facts, the need for the application of force was minimal, the amount of force that was used was excessive, the force inflicted serious injuries, and the force was not applied in a good faith effort to maintain or restore discipline, but rather was used maliciously and sadistically for the very purpose of causing harm.  summary judgment should not be granted.

### QUALIFIED IMMUNITY

The defendants in their individual capacities assert that they are entitled to qualified immunity from this suit for

13

damages.  It appears that they are incorrect.

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.  That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Harlow</u>, 457 U.S. at 818.  The defendants bear the burden of proof of establishing this affirmative defense.  <u>Gomez v. Toledo</u>, 446 U.S. 635 (1980).

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), <u>cert. denied</u>, 516 U.S. 824, 116 S.Ct. 89 (1985).

14

However, in cases such as this where the qualified immunity defense turns on an interpretation of facts which are in dispute, summary judgment on qualified immunity grounds is inappropriate. Miles v. Bollinger, 979 F.2d 848 (4th Cir. 1992), citing Rainey v. Conerly, 973 F.2d 321 (4th Cir. 1992).

Here, Defendants have not borne their burden to prove the affirmative defense because Fulks has pled and presented evidence of unconstitutional conditions of confinement and of the use of unconstitutionally excessive force. Further, a detainee's right not to be punished by denial of the minimal civilized measure of life's necessities is a firmly established right. See, e.g., Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991). Likewise a detainee's right not to be punished by the use of excessive force is firmly established. See, e.g., United States v. Cobb, 905 F.2d 784 (4th Cir. 1990). As such, it cannot be said that there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation... ." These officials are not entitled to qualified immunity. Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994).

### SUMMARY JUDGMENT MOTION CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants be granted summary judgment in their official capacities only and be denied summary judgment in their individual capacities.

15

## MOTION TO AMEND TO SUBSTITUTE PARTY FOR JOHN DOE #1

On January 29, 2007, Fulks filed a motion to amend his complaint to substitute A. Richbourg for defendant John Doe #1 which motion the defendants opposed on February 13, 2007. Fulks then filed a reply on March 5, 2007. Hence, consideration of the motion is appropriate.

A review of the record and relevant case law reveals that the motion should be denied as futile because the requirements of Fed.R.Civ.P.4(m) have not been complied with and because it is time barred.

For purposes of 42 U.S.C. §1983 litigation the Fourth Circuit has held that the applicable statute of limitations is the same as the analogous state statute of limitations. See, Garrett v. Elko, 120 F.3d 261 (4th Cir. 1997), citing Wilson v. Garcia, 471 U.S. 261, 266-69, 105 S.Ct. 1938 (1985). The applicable statute of limitations in South Carolina is three years. Id.

Fulks alleges that John Doe #1 was one of the deputies who assaulted him on April 24, 2003. Therefore, his cause of action accrued at the latest on April 24, 2003, and any party substituted in his excessive force cause of action had to have been added or substituted within three years, that is, by April 25, 2006. Fulks waited until January 29, 2007, to move to amend to substitute A. Richbourg for John Doe #1, well past the running

16

of the applicable statute of limitations.

Nor does the proposed amendment relate back to the March 8, 2006, filing of his complaint because it does not meet the requirements of Fed.R.Civ.P. 15(c) which provides:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when,
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fulks did not mistakenly name John Doe #1 for Richbourg as contemplated by Rule 15 (c)(3). He simply did not know who the correct defendant was. "It would produce a paradoxical result wherein a plaintiff with no knowledge of the proper defendant could file a timely complaint naming any entity as a defendant and then amend the complaint to add the proper defendant after the statute of limitations had run. In effect, this would circumvent the weight of federal case law holding that the

17

substitution of named parties for "John Doe" defendants does not constitute a mistake pursuant to Rule 15(c)(3)." Locklear v. Bergman & Beving AB, 457 F.3d 363 (4th Cir. 2006), relying on Wayne v. Jarvis, 197 F.3d 1098, 1103-04 (11th Cir. 1999); Jacobsen v. Osborne, 133 F.3d 315, 321 (5th Cir. 1998); Baskin v. City of Des Plaines, 138 F.3d 701, 704 (7th Cir. 1998); Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995), modified 74 F.3d 1366 (2d Cir. 1996). Fulks cannot use Rule 15(c) to circumvent the statute of limitations.[2]

Additionally, the proposed amendment violates Fed.R.Civ.P. 4(m). Here Fulks filed his Complaint in Indiana on March 8, 2006. The matter was transferred to this court on or about March 24, 2006. On May 24, 2006, George C. Kosko, United States Magistrate Judge, ordered that the summons and complaints be served, and informed Fulks of the requirements of Fed.R.Civ.P. 4(m):

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that

---

[2] According to sworn affidavits submitted by the defendants, A. Richbourg retired from the LCDC in January 2004, nearly a year and one half before this matter was transferred to South Carolina. See, Aff. of Driggers, ¶¶ 3-5. Further, the uncontroverted evidence is that former deputy Richbourg has had no notice of this case. See, Aff. of Tate, ¶¶ 5 and 6.

> service be effected within a specified time;
> provided that if the plaintiff shows good cause
> for the failure, the court shall extend the time
> for service for an appropriate period.

Therefore, at the latest, the period of time under Rule 4(m) ran on or about September 21, 2006, so that Fulks also missed his time to serve the proposed defendant.

Fulks argued that discovery has not yet commenced so that he had no way to ascertain the identity of John Doe #1 until defendants moved for summary judgment on November 27, 2006, and filed documents which revealed the identity of that deputy. However, Fulks has made no attempt to serve discovery to date although he has had discovery available to him.  The defendants did not in any way impede any effort to discover the identities of the John Doe defendants, discovery is closed according to Local Rule 26.04.[3]  Fulks even waited over two months after he was provided the defendants' motion upon which he relies to bring his motion to amend.

Therefore, Fulks cannot meet the requirements of Rule 15(c)(3), and his proposed amendment would not relate back to the

---

[3] Local rule 26.04 provides in relevant part:
"26.04: Pretrial Discovery for Civil Actions Exempted from Fed. R. Civ. P. 26(a)(1).  Pretrial discovery in all civil cases that are exempt under Fed. R. Civ. P. 26(a)(1)(E) must be completed within a period of ninety (90) days following the joinder of issues unless otherwise ordered." Fed. R. Civ. P. 26(a)(1)(E)(iv) is "an action brought without counsel by a person in the custody of the United States, a state, or a state subdivision.

19

date of the filing of his complaint. As a result, his naming of this proposed defendant is well outside the applicable limitations period.[4] Additionally, Fulks is clearly in violation of the 120-day window provided by Rule 4(m) as to both John Doe defendants and they should be dismissed on that basis alone.

Lastly, Fulks also filed a motion to compel the court to serve Paula Lybrand. That motion should be denied. The United States Marshal's Service attempted to serve her at the location provided by the plaintiff and were unable to do so because she was no longer employed at the LCDC. Although Fulks had notice of the lack of an address at which to serve Lybrand, he has not sought assistance to obtain the address or bourne his responsibility to provide such an address. The Marshal has indicated that his efforts to serve the defendant were futile. Lybrand should be dismissed from the action for Fulks' failure to comply with Rule 4(m).

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that summary judgment against the named defendants in their individual capacities be denied, that summary judgment

---

[4] Although no affidavit was filed to support the allegation, the defendants also take the position that the description of the individual the Plaintiff claimed was John Doe # 1, a black male, approximately six feet tall and about two hundred pounds who is approximately twenty-eight to thirty years of age, does not fit the description of A. Richbourg.

against the named defendants in their official capacities be granted, and that the third cause of action be dismissed for lack of any injury. The plaintiff's motion to amend to substitute A. Richbourg for John Doe #1 should be denied, and both John Doe defendants should be dismissed.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

March 29, 2007

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

22