**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Chadrick Fulks, #16617-074, )<br>)<br>               Plaintiff, )<br>v. )<br>)<br>James Metts, Sheriff/ Lexington County; )<br>Bernice Mitchell, Deputy Sheriff; Paula )<br>Lybrand, Deputy Sheriff; Valerie Allen, )<br>Deputy Sheriff; Cain Myrant, Deputy )<br>Sheriff; John Doe #1, Deputy Sheriff; John )<br>Doe #2, Deputy Sheriff, )<br>)<br>              Defendants. )<br>_____) | C.A. No.:2:06-0980-PMD-RSC<br><br>**<u>ORDER</u>** |

Federal prisoner Chadrick Fulks ("Plaintiff" or "Fulks"), proceeding *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983.[1] This matter is currently before the court upon Defendants' motion for summary judgment, Plaintiff's motion to amend the complaint, and Plaintiff's motion to compel service on Paula Lybrand. In a report and recommendation ("R&R"), the United States Magistrate Judge addressed these motions and recommended that Defendants' motion for summary judgment be granted in part and denied in part and that both of Plaintiff's motions be denied.

A party may object, in writing, to a R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Both Plaintiff and Defendants filed timely objections to the R&R.

---

[1] Plaintiff denominated the action as one brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); however, the named defendants in this case are state actors rather than federal actors. Accordingly, this action is properly brought under 42 U.S.C. § 1983.

1

**BACKGROUND**

In his complaint, Fulks asserts Defendants violated his Fourteenth Amendment rights during his pretrial incarceration at the Lexington County Detention Center ("LCDC"), where he was housed by the United States Marshal's Service. Specifically, he alleges four causes of action: (1) that he was subjected to "punitive segregation" without due process, (2) that unconstitutional conditions of confinement caused him injury, (3) that he was denied access to a LCDC Rule Book and/or Jail Manual such that he was unable to implement a grievance procedure, and (4) that he was subjected to an excessive use of force. He sues each Defendant in his or her official and individual capacities and seeks damages.

For purposes of Defendants' motion for summary judgment, the facts supported by the evidence and taken in light most favorable to Plaintiff, the non-moving party, are as follows:

*A.     "Punitive" Segregation, Conditions of Confinement, and Denial of Prison Manual*

Plaintiff was held at LCDC as a pretrial detainee from January 13, 2003 until April 24, 2003, at which time he was transferred to the Alvin S. Glenn Detention Center ("AGDC"). (Metts Aff., Ex. A.) Fulks complains that although he had not committed any infractions he was held in "administrative segregation" at LCDC because of his "high profile case and for being a known flight risk." (Fulks Aff. ¶ 2.) In administrative segregation, he was denied commissary privileges, visitation except from his attorneys, telephone privileges, reading materials, writing utensils, personal property and his "legal property." (Id. ¶ 4.) Plaintiff was placed in administrative segregation due to the nature of the violent crimes he had committed and the fact that he constituted a high escape risk. (Metts Aff. ¶ 6, Exhibit B.)

Fulks asserts that his cell was extremely damp and cold with a filthy, overflowing toilet and

2

thick black "moss" and feces on the walls and fixtures. (Fulks Aff. ¶ 8.) Defendants Sgt. Mitchell and Sheriff Metts allegedly denied Plaintiff's requests for cleaning supplies, toilet paper for the first two weeks, and any basic hygiene items with the exception of "using soap and a tooth brush during showers three times a week." (Compl. Count 2 ¶ 5.) Mitchell and Metts allegedly told Fulks that they were not going to help him because they did not like rapists and murderers like Fulks. (Id. ¶ 6.) Mitchell and Metts also allegedly denied Fulks' request for a Jail Handbook while at LCDC. (Compl. Count 1 ¶ 7.) As a result, Fulks asserts that he was unable to resort to applicable administrative remedies for his unsanitary prison conditions.

Fulks asserts that Sheriff Metts and Sgt. Mitchell intentionally subjected him to inhumane and injurious conditions of confinement, resulting in his serious injury. Fulks alleges that the unsanitary conditions of the segregation unit cell caused him to develop bacterial infections on his eyes, throat, and face and to lose about fifty pounds. (Fulks Aff. ¶ 16, 40-44, Ex. A.) Fulks asserts he "thought he was going to die because he was desperately sick." (Id. ¶ 41.) Fulks further alleges that Defendants would not allow him writing utensils for filling out a sick call request and that he was only treated for his infection after his attorney contacted the U.S. Marshals Service and the Sheriff's Department. (Id. ¶ 45 - 46, Exhibit A.)

### B.     *Excessive Use of Force*

The following facts are undisputed. On April 24, 2003, in preparation for his transfer to the AGDC, Plaintiff was placed in belly chains, handcuffs, and leg irons. In the booking area, officers instructed Plaintiff to get rid of all his personal property and told him that he could only take his legal paperwork. (Id. ¶ 52.) Plaintiff turned over all property except some photographs which he claimed were evidence needed for his criminal defense. (Id. ¶ 52-55, Ex. G, H, I.) The officers saw

that Fulks had put the photographs in his pants. After Fulks refused to give up the photographs, Officers Mitchell, Lybrand, Richbourg,[2] and Myrant forcibly extracted the photographs from Plaintiff's possession. Regarding the use of force, Fulks and Defendants have widely divergent descriptions of the event:

Fulks asserts that after easily retrieving the photographs from his pants, Myrant struck Fulks repeatedly in the face with his fist. (Id. ¶ 61.) Another officer slammed him onto the floor and held him there with Lybrand's help. (Id. ¶ 56.) Allen jumped on him while the officers held him and "grabbed [him] by the genitals and penis and started squeezing and pulling at the same time." (Id. ¶ 57.) At some point, one officer "drop kicked [Fulks] full force in the butt sending [him] reeling across the cell . . . and Myrant jumped on top of [him] and hit [him] in the face, the side of the head, and neck." (Id. ¶ 61.) Throughout the use of force, Fulks avers that he was unresisting. (Id.)

In contrast, Defendants' Incident Reports and affidavits indicate that they used the "least amount of force" necessary to retrieve the photographs from Fulks. (Metts Aff. Ex. A at 41-52.) Defendants assert that Fulks "attempted to kick, bite, and spit upon the officers, while he violently struggled, twisting wildly, against the officers." (Mitchell Aff. ¶ 9.) It is undisputed that Defendants placed Fulks in a restraint chair and that, following the use of force, Fulks was seen by medical personnel prior to being transported to AGDC. (Metts Aff. Ex. A at 42-51.)

Upon arrival at AGDC, the in-taking officer examined Fulks and noted that he had "bruises around his neck & face, blood around his nose & scratches on neck." (Briscoe Aff. Ex. A at 2.) The officer ascribed these injuries to "fighting" on that day. (Id.) Fulks alleges that he was eventually taken to a hospital where he was found to have a "ruptured tailbone," a broken tooth, extensive

---

[2] Officer Richbourg was not a named defendant in Plaintiff's original complaint.

4

bruising and lacerations all over his body, broken blood vessels in his eyes, bruised genitalia, and "severe whiplash."[3] (Fulks Aff. ¶ 71.) The medical records from the AGDC indicate that for several months following this use of force, Fulks suffered from rectal bleeding, constipation, pain and depression. (Briscoe Aff. Ex. A at 14-25.) Additionally, the physician's notes indicate that these symptoms may have been caused by a broken tailbone and that Fulks' injuries required the care of a specialist. (Id. at 16, 19-21.)

## **HISTORY OF THE CASE**

Fulks brought this civil rights action on March 8, 2006 in the District Court for the Southern District of Indiana and then transferred it to this court on March 24, 2006. Fulks attempted to serve Paula Lybrand on March 24, 2006 by completing the appropriate form, Form USM-285, and including the address of Ms. Lybrand's last known place of employment, the LCDC. The form was returned to Fulks unexecuted with the notation that Ms. Lybrand was "No longer Employed" at the LCDC. (Pl. Objections, Ex. 1.) Fulks filed a "Motion to effectuate service on defendant Paula Lybrand" on September 11, 2006 claiming the Marshal did not use a reasonable investigative effort to serve Ms. Lybrand. (Pl. Objections at 3-4.)

Defendants filed a motion for summary judgment on November 27, 2006. In opposing the motion, Plaintiff filed his own affidavit as well as various exhibits. On January 29, 2007, Plaintiff filed a motion to amend his complaint to substitute "A. Richbourg" for John Doe #1 defendant. Defendants filed a reply to Plaintiff's opposition for summary judgment, and Plaintiff responded to the reply. Defendants then filed an opposition with affidavits to Plaintiff's motion to amend his

---

[3]Plaintiff has not submitted any documentation from this alleged trip to the hospital; however, he claims that he has "not had discovery available to . . . obtain these records which the defendants readily have available to them." (Fulks Aff. ¶ 74.)

5

complaint.

After considering Defendants' motion for summary judgment and the record, the Magistrate Judge made several findings: He found that (1) the Eleventh Amendment requires the court to dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities. (R&R at 10.) He also found that (2) because Plaintiff's sworn affidavit indicates that Defendants subjected Plaintiff to excessive force and unconstitutional conditions of confinement, and despite Defendants' strong showing of evidence contradicting Plaintiff's version of events, the court is faced with the need for a credibility determination which must await a finder of fact. (Id. at 11-12.) Next, he found that (3) Plaintiff's third cause of action - for lack of access to prison grievance procedure - failed to allege a cognizable injury and therefore failed to state a claim under § 1983. (Id. at 12.) Finally, the Magistrate Judge found that (4) Defendants were not entitled to qualified immunity in their individual capacities from Plaintiff's excessive force and conditions of confinement claims. (Id. at 13-15.) Accordingly, the Magistrate Judge recommended that Defendants in their official capacities be dismissed from the action, and that the third cause of action be dismissed, but that otherwise Defendants' motion for summary judgment be denied. (Id. at 15.)

Regarding Plaintiff's motions, the Magistrate Judge found that service to Ms. Lybrand's last known place of employment was sufficient and recommended that Plaintiff's motion to compel the court to serve Paula Lybrand be denied. (Id. at 20.) Finally, the Magistrate Judge recommended that Plaintiff's motion to amend his complaint to substitute "A. Richbourg" for John Doe#1 be denied, and that both John Doe defendants be dismissed. (Id. at 20.)

**STANDARD OF REVIEW**

**I.**     *Magistrate Judge's R&R*

The court reviews *de novo* those portions of the R&R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court has reviewed the entire record, the R&R, and both parties' objections. The Magistrate Judge fairly and accurately summarized the facts in this case and the court incorporates the R&R's recitation of the facts by specific reference. However, the court finds that the R&R misapplied some principles of law. Accordingly, as described below, the court adopts the Magistrate Judge's R&R only to the extent it is not inconsistent with this Order.

**II.**     *Legal Standard for Summary Judgment*

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990) (citing *Pignons v. S.A. De Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981)). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 248-49 (1986)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## **DISCUSSION**

### I.     *Defendants' Objections to the R&R*

Defendants object to the Magistrate Judge's recommendation that their motion for summary judgment be denied in part. They assert that Fulks has not submitted sufficient evidence in support of either his conditions of confinement claim or his excessive use of force claim to survive a motion for summary judgment. (Def. Objections at 2.) Defendants also object that the Magistrate Judge erred in finding Defendants were not entitled to qualified immunity and in failing to address Plaintiff's "punitive" segregation claim.

### A.     *Conditions of Confinement*

Defendants object that the Magistrate Judge erred in finding that Fulks' unsupported assertions of injury are sufficient to survive a motion for summary judgment. (Id. at 2.) As previously stated, Plaintiff's affidavit states that his unsanitary conditions of confinement while incarcerated at LCDC caused him to suffer a serious infection and to lose a significant amount of weight. Defendants argue, however, that the medical records do not support these allegations. (Id. at 3.) They claim the "medical records clearly show that the Plaintiff suffered one bacterial infection during his incarceration at the Lexington County Detention Center, and that once the Plaintiff put in for a sick call, the infection was addressed and treated appropriately." (Id. at 5 (citing Metts Aff. Ex. A, p. 23, 26, 28, 28-31.)) Defendants also object that no evidence supports Fulks' claim that he lost a significant amount of weight during his tenure at LCDC. (Def. Objections at 5.) As such,

8

Defendants argue that they are entitled to summary judgment on Plaintiff's conditions of confinement claim because the only evidence of injury comes from Plaintiff's unsupported self-serving affidavit. (Id. at 3.)

As a pretrial detainee,[4] Fulks' conditions of confinement while incarcerated at the LCDC are evaluated under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535, n. 16 (1979).[5] Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. *Id.* However, holding a detainee in uncomfortable surroundings does not necessarily constitute "punishment" for purposes of a § 1983 claim. *Id.* at 537. In order to make out a *prima facie* case that prison conditions violate the Fourteenth Amendment, a plaintiff must show both "(1) a serious deprivation of a basic human need and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin,* 952 F.2d 820, 824 (4th Cir. 1991) (internal citations omitted). Thus, the question before this court is whether the evidence presented is sufficient to create a genuine issue of fact that Plaintiff was denied the minimal civilized measure of life's necessities and that any named Defendant

---

[4] Until November 4, 2002, Fulks was a convicted prisoner of the Hopkins County Detention Center. On November 4, 2002, he escaped and was not caught again until November 20, 2002. Fulks was transferred to LCDC on January 13, 2003 after being charged with escape, kidnapping, car-jacking, and the murder of two women.

The court construes Fulks' status at the relevant time as that of a pretrial detainee. If it is "unclear whether Plaintiff is serving a term of confinement . . . or whether he is a pretrial detainee[,]" the court will still use the "deliberate indifference standard applied to convicts under the Eighth Amendment in *Estelle v. Gamble*, 429 U.S. 97 (1976)," to convicts as well as to pretrial detainees. *Chase v. Correctional Medical Services*, No. 04-2808, 2004 WL 3704200, at *2 (D. Md. Dec. 6, 2004) (citing *Whisenant v. Yuam*, 739 F.2d 160, 164 (4th Cir. 1984) and *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978)).

[5] The Eighth Amendment is used to evaluate conditions of confinement only for those convicted of crimes. *See Ingraham v. Wright,* 430 U.S. 651, 671-672, n. 40 (1977).

"kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

The court agrees that a plaintiff's affidavit consisting of conclusory statements or self-serving opinions without objective corroboration is insufficient to avoid summary judgment. *See Evans v. Technologies Application & Service Co.,* 80 F.3d 954, 962 (4th Cir.1996); *see also White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976). As such, Plaintiff cannot defeat Defendants' well-supported motion for summary judgment by simply averring in his affidavit that he suffered an injury as a result of his unsanitary conditions of confinement. *See Larken v. Perkins*, 22 Fed. Appx. 114, *1, n. * (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation . . . insufficient to stave off summary judgment."); *National Enterprises, Inc. v. Barnes,* 201 F.3d 331, 335 (4th Cir. 2000) ("Marvin J. Barnes' self-serving affidavit describing the content of the repurchase agreements is not enough to defeat National's motion for summary judgment."); *De Leon v. Saint Joseph Hosp., Inc*, 871 F.2d 1229, 1236 (4th Cir.1989) ("Unsupported allegations . . . do not confer talismanic immunity from Rule 56."). In the instant case, however, it is undisputed that the "medical records clearly show that the Plaintiff suffered one bacterial infection during his incarceration" at LCDC. (Def. Objections at 5 (citing Metts Aff., Ex. A at 23, 26, 28, 29, 30, and 31.)) Additionally, within a week of leaving the LCDC, the physicians' services noted Plaintiff had a "Chickenpox like skin rash," a description which corroborates Plaintiff's allegations of infection and rash during his incarceration at the LCDC. (Briscoe Aff. Ex. A at 12.) Further, Plaintiff presents evidence that he suffered an excessive loss of weight during his detention at LCDC. Plaintiff's Booking Report indicates that his weight was approximately 200 pounds on January 13,

2003 when he was admitted to the LCDC. (Fulks Aff. Ex. B.) Three months later, on April 9, 2003, upon being examined for the numbness in the left side of his face, a physician indicates in Fulks' clinic visit report that his weight was 147.5 pounds. (Id. Ex. C.) Elsewhere in the record, in his Booking Report from AGDC on April 24, 2003, Plaintiff's weight is reported as being 190 pounds. (Briscoe Aff. Ex. A at 1.) The evidence from the record corroborates Plaintiff's allegations of weight loss, bacterial infection, and a skin rash. For this reason, the court finds that the Magistrate Judge did not err in finding that sufficient evidence supported Plaintiff's claim of injury to create a genuine issue of material fact.

Defendants also object that Fulks' claim fails because he has not shown that the cell condition was, in fact, the cause of his alleged health problems. (Def. Objections at 4.) In addition to evidence of injury, a plaintiff must offer some proof of an "actual affirmative causal link" between the conditions of the prison and the injury in order to be successful against a motion for summary judgment. *Brown v. Mitchell*, 308 F. Supp. 2d 682, 695, n. 12 (E.D. Va. 2004) (citing *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) and *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987)). However, the court finds that, according Fulks' evidence all reasonable inferences, there is a sufficient causal link between the alleged unsanitary conditions at LCDC and Fulks' bacterial infection and skin rash. "[C]ommon sense suggests that bacterial infections are much more likely to occur in an overcrowded, poorly ventilated, and unsanitary jail than in one not suffering from those problems." *Id.* at 695. Thus, because Fulks presents evidence of an injury which is often caused by living in unsanitary conditions, the question of whether Fulks' injury was in fact caused by the conditions of his cell is an issue of fact. *Compare Westmoreland v. Brown,* 883 F. Supp. 67, 77 (E.D. Va. 1995) (holding that notwithstanding the plaintiff's "conclusory legal assertions" of

causation, there was nothing to indicate that overcrowding at the jail had anything to do with the plaintiff's injury from an inmate-on-innmate assault) *with Brown*, 308 F. Supp. 2d at 695 (holding that "[u]nlike an arranged fight, which is just as likely to occur in an overcrowded facility as in a reasonably populated one," a causal link is presumed to exist between alleged overcrowded, unsanitary, and poorly ventilated conditions at a jail and an inmate's sickness and death).

The court further notes that there is evidence corroborating Plaintiff's claim that Defendants were indifferent to the unsanitary conditions and to Plaintiff's resulting infection. Although the medical record notes that Plaintiff did not request a medical visit, Plaintiff states in his affidavit that Defendants repeatedly denied his requests for writing utensils in order to fill out a medical request form. (Fulks Aff. ¶ 44-45.) On April 8, 2003, after learning of Plaintiff's poor physical condition, Plaintiff's lawyer William Nettles sent a letter to the LCDC, which stated:

> The fact that Chad has an obvious rash and swelling indicates to me that he needs to see a doctor immediately. I am concerned that Chad might have to wait a week to two weeks to see a doctor. During that time, any infection he might have may spread throughout his whole body.

(Metts Aff. Ex. A, p. 40.) Considering this letter and Fulks' affidavit in the light most favorable to Fulks, a genuine issue of material fact exists as to whether Defendants were deliberately indifferent to Fulks' well-being.

The evidence raises genuine issues of material fact as to whether Defendants were deliberately indifferent to unsanitary prison conditions, thereby depriving Fulks of the minimal civilized measures of life's necessities. As such, the court denies Defendants' request for summary judgment on Fulks' condition of confinement claim.

### B.    *Excessive Use of Force*

Defendants object to the Magistrate Judge's finding that Fulks' excessive force claim should

survive summary judgment. In their Objections, Defendants argue that summary judgment on this claim is appropriate because (1) the medical record does not support Plaintiff's allegation of serious, non-*de minimis* injury, and (2) the evidence indicates that Defendants' use of force was not malicious.

The applicable legal standard for cases claiming use of excessive force during pretrial detention is found in *Riley v. Dorton,* 115 F.3d 1159 (4th Cir. 1997) (*en banc*), *Taylor v. McDuffie,* 155 F.3d 479 (4th Cir. 1998), *cert. denied,* 525 U.S. 1181, 119 S.Ct. 1121 (1999), and *Gray v. Spillman,* 925 F.2d 90 (4th Cir. 1991). In *Riley*, the Fourth Circuit held that "excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." 115 F.3d at 1166. Under the Due Process Clause, if Fulks is to prevail, he must show that Defendants "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers,* 475 U.S. 312, 320 (1986). In determining whether the force used in this case was unnecessary and excessive, the fact finder must consider such factors as (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," and (4) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1003, 94 S.Ct. 462 (1973)); *Taylor,* 155 F.3d at 483 (quoting *Whitley,* 475 U.S. at 320-21, 106 S.Ct. 1078). In addition, Fulks must show that the injuries resulting from the force applied were more than *de minimis. See Riley,* 115 F.3d at 1167 (holding that a pretrial detainee need not sustain a "severe or permanent injury" in order to have an actionable excessive force claim, but injury must be more than *de minimis*); *Taylor,* 155 F.3d at 483-84; *but see Watford v. Bruce,* 126 F. Supp. 2d 425 (E.D. Va.

2001) (holding that where prison officials maliciously and unprovokedly use force to cause harm, inmates need not present evidence of significant injury to state a cause of action under § 1983).

Addressing Defendants' objections, the court finds the evidence supports Plaintiff's allegation of serious injury. On April 24, 2003, upon arrival at AGDC, Fulks was immediately evaluated as having visible "bruises around his neck and face, blood around his nose, and scratches on his neck." (Brisco Aff. Ex. A at 2.) On April 30, 2003, a physician noted that Fulks had "nightsweats, neck pain & ankle & wrist discoloring from being beat up at another facility." (Id. at 12.) Three weeks later, in the Progress Notes prepared by the Prison Health Services, the physician noted that Plaintiff's "wrists continues to be swollen" and he was unable to make a fist. (Id. at 16.) For several months following the use of force, the medical record refers to Plaintiff's complaints of constipation and pain in his tail bone. (Id. at 12-16, 19-21.) Plaintiff's Progression Notes, dated June 11, 2003, state "No one has followed up on X-ray or constipation." (Id. at 20.) Plaintiff's lawyer, William Nettles, wrote a letter on behalf of Fulks on July 16, 2003 to ensure that Fulks received the proper care:

> Our physician indicates that Mr. Fulks is still bleeding from the region. Our physician is very concerned that this condition has not been addressed at this point. If Mr. Fulks has suffered a perforated rectum, he is very susceptible to infection and, perhaps, grave illness.

(Id. at 98.) Considered in the light most favorable to Plaintiff, this letter and medical evidence supports Plaintiff's claims of neck injury and broken tailbone, which constitutes serious, not *de minimis*, injuries. *See Miller v. Leathers*, 913 F.2d 1085, 1089 (4th Cir. 1990) (court held that fractured arm and swollen elbow suffered by inmate as a result of being struck by a guard with riot baton were not *de minimis* injuries).

Defendants also assert that the use of force was necessarily not excessive because Fulks was

14

resisting a direct order and was refusing to turn over his personal property. (Metts Aff. Ex. A at 41, 43, 45, 47, 49, 51.) When determining whether an officer has used excessive force, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. *See Jones v. Buchanan*, 325 F.3d 520 (4th Cir. 2003) (holding that while plaintiff was admittedly drunk, using foul language and disobeying a direct order to sit down, police officers' use of force was excessive where plaintiff was unarmed, locked in a room by himself, and handcuffed). The Fourth Circuit has held that the punitive intent behind a defendant's use of force may be inferred when the force is not "reasonably related to a legitimate governmental objective." *Bell,* 441 U.S. at 539 (if a condition of pretrial detention is not reasonably related to a legitimate goal, "a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted"). In the instant case, it is undisputed that Fulks was fully restrained in preparation for transport when Defendants used force against him that resulted in serious injuries. (Metts Aff. Ex. A at 41-52.) Fulks' sworn statement indicates that he did not resist the officers during the use of force and that Defendants continued to beat him long after the purpose of the use of force – retrieving the photographs – had been achieved. (Fulks Aff. ¶¶ 52, 60-64.) On this evidence, a jury could conclude that, although Fulks admittedly disobeyed a direct order, Defendants nonetheless used excessive force to ensure compliance. For this reason, a genuine issue of material fact exists as to whether the use of force in response to Fulks' refusal to part with his photographs was reasonably related to legitimate penological interests or was malicious and sadistic.

For the above reasons, the court rejects Defendants' objections and denies their motion for summary judgment regarding Plaintiff's excessive force claim.

### C.     *Qualified Immunity*

The Magistrate Judge found that Defendants in their individual capacities are not entitled to qualified immunity from this suit for damages because Fulks has pled and presented evidence of unconstitutional conditions of confinement and of the use of unconstitutionally excessive force. Defendants object, arguing that summary judgment should be granted based on Plaintiff's failure to present evidence of a "constitutional deprivation." (Def. Objections at 10.) This court does not agree. As stated above, Fulks has presented sufficient evidence to raise a genuine issue of material fact as to whether Defendants' conduct violated the protections of the Fourteenth Amendment. Furthermore, Defendants bear the burden of proof of establishing qualified immunity as an affirmative defense. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Because there is a genuine issue of material fact which needs to be decided by a fact finder, summary judgment is not appropriate, and Defendants in their individual capacities are not entitled to the affirmative defense of qualified immunity as a matter of law.

### D.     *Punitive Segregation*

Finally, Defendants object that the Magistrate Judge failed to consider Plaintiff's "Count One," in which Plaintiff asserts that he was subjected to "punitive" segregation in violation of his right to due process. (Def. Objections at 10.) Defendants assert the Magistrate Judge erred in failing to explicitly grant summary judgment on this Count.

As discussed above, the Due Process Clause provides that a detainee may not be punished prior to an adjudication of guilt. *Bell,* 441 U.S. at 535, n. 16. In order to prevail on a due process claim, a plaintiff must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *See Plyler v. Moore*, 100 F.3d 365, 374 (4th Cir. 1996). The Supreme Court

has held that the liberty interest protected by the Due Process Clause is generally limited in the prison context to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995). Further, the Fourth Circuit has held that a prisoner's placement in administrative segregation does not create an atypical or significant hardship. *McNeill v. Currie*, 84 Fed.Appx. 276 (4th Cir. 2003); *Beverati v. Smith*, 120 F.3d 500, 503-04 (4th Cir. 1997).

In this case, Defendants present evidence that Plaintiff was placed in administrative segregation due to the nature of the violent crimes committed and the fact that he constituted a high escape risk. (Metts Aff. ¶ 6, Exhibit B.) Plaintiff does not refute this evidence. As such, the court finds the placement of Plaintiff in segregation was reasonably related to legitimate penological interests and was not impermissible punishment. Furthermore, as discussed above, placement in segregation, without more, is not a deprivation of a protected liberty interest. For these reasons, Count One of Plaintiff's complaint fails as a matter of law and the court grants Defendants' motion for summary judgment as it relates to this Count.

## II.     *Plaintiff's Objections to the R&R*

Fulks objects to the Magistrate Judge's recommendation that the court deny his motion to compel the court to serve Paula Lybrand. (Pl. Objections at 2.) Fulks does not object to the Magistrate Judge's recommendation to (1) grant summary judgment for Defendants in their official capacities, (2) dismiss the third cause of action for lack of injury, (3) deny Plaintiff's motion to amend his complaint, and (4) dismiss both John Doe defendants. Therefore, this court adopts these recommendations without any further discussion.

### *Motion to Compel the Court to Serve Paula Lybrand*

The Magistrate Judge found that Plaintiff's motion to compel the court to serve Paula Lybrand should be denied, explaining that Fulks bears the responsibility of providing an updated address and failed to seek assistance to obtain the address. (R&R at 20.) Plaintiff objects to this recommendation, claiming the Marshals Service has a duty to make further reasonable investigative efforts to effectuate service once determining Ms. Lybrand was "no longer employed" at the listed location. (Pl. Objections, Ex. 1)

Since Plaintiff has been granted *in forma pauperis* status in this case, service requirements fall under the holding of *Greene v. Holloway,* 210 F.3d 361 (4th Cir. 2000) (unpublished). In *Greene*, the Fourth Circuit Court of Appeals cited with approval the case of *Graham v. Satkoski,* 51 F.3d 710 (7th Cir. 1995), which held that

> [a] prisoner need only furnish the Marshals Service with information necessary to identify the defendants. . . . [O]nce the former prison employee is identified, the Marshals Service should be able to ascertain the individual's current address and, on the basis of that information, complete service. The prisoner may rely on the Marshals Service to serve process, and the Marshals Service's failure to complete service is automatically "good cause" to extend time for service under Rule 4(m). . . . *Sellers* [*v. United States,* 902 F.2d 598 (7th Cir. 1990)] is grounded in the belief that use of marshals to effect service alleviates two concerns that pervade prisoner litigation, state or federal: 1) the security risks inherent in providing the addresses of prison employees to prisoners; and 2) the reality that prisoners often get the "runaround" when they attempt to obtain information through governmental channels and needless attendant delays in litigating a case result.

*Id.* at 713 (internal citations omitted).

As such, under *Greene*, the United States Marshals Service, if provided "sufficient information to identify the defendant," must expend a reasonable investigative effort to locate the defendant at his new address. *Greene*, 210 F.3d at 361; *see also Karlsson v. Rabinowitz*, 318 F.2d 666, 668-669 (4th Cir. 1963) ("[T]he real purpose of service of process is to give notice to the

18

defendant that he is answerable to the claim of the plaintiff[,]" and "where actual notice of the commencement of the action and the duty to defend has been received by the one served," service under Rule 4(d) "should be liberally construed to effectuate service and uphold jurisdiction of the court"). In a recent case, this court found that a Marshal's attempted delivery of service to a named defendant's place of former employment was insufficient to discharge his duty to "expend a reasonable investigative effort to locate a [d]efendant once [s]he is properly identified." *Lucas v. Eagleton*, 2006 WL 1663810 (D.S.C. June 8, 2006) (Wooton, J.) (holding that Marshal had a duty to make a reasonable attempt to serve two defendants once determining that they were no longer employed by the Department of Corrections). In *Lucas*, the court reasoned that it was understandable that the defendants, who were "apparently no longer employed by the Department of Corrections," did not wish to provide their personal addresses to the plaintiff. *Id.* at *3. However, the court held that "in light of . . . *Graham* and *Greene,* and the fact that [the] [p]laintiff has been granted IFP status in this case, the[] [d]efendants' motion to dismiss [for lack of service of process] should be denied, with further service to be attempted by the United States Marshal." *Id.*

In this case, as in *Lucas*, the Marshal returned the appropriate service forms to Fulks unexecuted with the notation that Ms. Lybrand was "[n]o longer [e]mployed" at the LCDC. (Pl. Objections Ex. 1.) This statement reflects no investigative effort to locate Ms. Lybrand at her new address. The Marshals Service needs to "expend a reasonable investigative effort" to locate Ms. Lybrand's current address before this duty is fulfilled. Because the record fails to disclose the nature of the effort, if any, in which the Marshals Service engaged when attempting to locate Ms. Lybrand, the court grants Fulks' motion and directs the United States Marshal to make a reasonable effort to find and serve Paula Lybrand.

## CONCLUSION

It is, therefore, **ORDERED,** adopting in part the Magistrate Judge's recommendations, that Defendants' motion for summary judgment is granted in part and denied in part. Defendants in their official capacities are **DISMISSED** from the action, and **Count One** and **Count Three** of Plaintiff's Complaint are also **DISMISSED**. In all other respects, Defendants' motion for summary judgment is **DENIED**. Accordingly, **Counts Two** and **Four** will **PROCEED** against Defendants in their individual capacities.

It is further **ORDERED** that Plaintiff's motion to compel service upon Paula Lybrand is **GRANTED.** The United States Marshal is directed to expend reasonable efforts to personally serve this Defendant at her place of business or residence. Plaintiff's motion for leave to file an amended complaint is **DENIED,** and the John Doe Defendants are **DISMISSED.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**July 17, 2007.**